1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                       EASTERN DISTRICT OF CALIFORNIA

10

KENNETH ALLEN PECK,
11                                                    Case No. 1:18–cv–00656–SKO
               Plaintiff,
12
       v.                                             ORDER ON PLAINTIFF'S SOCIAL
13                                                    SECURITY COMPLAINT
NANCY A. BERRYHILL,
14   Acting Commissioner of Social Security,

15               Defendant.                           (Doc. 1)

16   _____/

17

18                          **I.  INTRODUCTION**

19        On May 12, 2018, Plaintiff Kenneth Allen Peck ("Plaintiff") filed a complaint under 42

20   U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of

21   Social Security (the "Commissioner" or "Defendant") denying his application for Disability

22   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  (Doc. 1.)  The matter

23   is currently before the Court on the parties' briefs, which were submitted, without oral argument,

24   to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

25                          **II.  BACKGROUND**

26        On July 24, 2015, Plaintiff filed an application for DIB and SSI, alleging that he became

27   disabled on August 24, 2010, due to chronic body pain, "left hand cripple," back injury, hernia,

28
_____
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 6, 9.)

chronic neck pain, headache, and muscle spasms. (Administrative Record ("AR") 180–93, 207.) Plaintiff was born on December 30, 1965, and was 44 years old on the alleged disability onset date. (*See* AR 180.) Plaintiff has a high school education, and previously worked delivering bins for a waste company from 2004 to 2010 and as a bus driver for handicap children in 2013. (AR 208–09.)

**A.    Relevant Medical Evidence[2]**

**        1.    Shaw Walk-In Medical Center**

On May 15, 2015, Plaintiff presented to the Shaw Walk-In Medical Center to establish care for back pain and two hernias. (AR 281.) The medical professional treating Plaintiff, whose name is illegible, noted that Plaintiff had high blood pressure, but Plaintiff refused medication. (AR 281.) Plaintiff returned for a routine check-up on June 9, 2015, and complained of pain associated with a hernia. (AR 280.) He was directed to avoid heavy lifting and referred for an x-ray of his lumbar spine. (AR 280.) The x-ray revealed "abnormal" results and an MRI of Plaintiff's complete spine was requested. (AR 278.)

The MRI of Plaintiff's cervical spine, performed on July 18, 2015, revealed 1 to 2 mm diffuse disc bulges at the C3–C4, C4–C5, and C6–C7 levels, and mild to moderate disc height loss with a 2 mm diffuse osteophyte complex at the C5–C6 level. (AR 285–86.) The spinal canal was also mildly stenotic with subtle indentation of the thecal sac at the C5–C6 level. (AR 286.) The MRI of the lumbar spine revealed a 1 to 2 mm diffuse disc bulge at the L4–L5 level as well as moderate to severe disc height loss with a 2 to 3 mm diffuse disc osteophyte complex at the L5–S1 level. (AR 289.) The MRI of the thoracic spine revealed mild to moderate degenerative changes, which were most severe at the T9–T10, T10–T11, and T11–T12 levels. (AR 291.)

On July 29, 2015, Plaintiff presented to Dr. Sukhjit Chahal for "a hernia problem." (AR 297.) Dr. Chahal noted an epigastric bulge on Plaintiff's upper abdomen, but opined it "should not be fixed, because they always come back, and there is no danger of leaving it[.]" (AR 297.)

---

[2] As Plaintiff's assertions of error are limited to the ALJ's consideration of the medical opinion of Family Nurse Practitioner Laura Cox and whether the ALJ erred in her discussion of Plaintiff's use of a wheelchair, only evidence relevant to those arguments is set forth in this Order.

Dr. Chahal also noted a small umbilical hernia with symptoms of burning and "a gas feeling in his belly." (AR 297.) Dr. Chalal stated "it would probably be a good idea to have GI consult," but opined that he would leave the hernia alone as it could be repaired at any time. (AR 297.)

On August 4, 2015, Plaintiff presented for a follow-up appointment on his MRIs and to refill his prescriptions. Plaintiff reported he was "unwilling to do any surgery for his back" and "does not want any steroid injections" because he was "content" with "conservative treatment and medication." (AR 304.) Plaintiff further reported that ibuprofen "works well to control his pain." (AR 304.)

**2.      Community Medical Centers**

On July 4, 2015, Plaintiff was admitted to the emergency room due a laceration of his left thumb. (AR 445.) He was noted as negative for back pain, joint swelling, gait problem, neck pain, and neck stiffness, and physical examination revealed normal range of motion and normal strength. (AR 446.) Plaintiff's laceration was treated, and he was counseled regarding wound care and the need for follow up. (AR 448.)

**3.      Michael Sachdeva, M.D.**

On September 2, 2015, Plaintiff presented to Dr. Sachdeva for a consultative internal medicine evaluation. (AR 309–14.) Plaintiff complained of low back pain and reported that the pain does not radiate, but he is unable to flex, bend or walk for more than five to ten minutes with his cane. (AR 309.) Plaintiff also reported he had never been referred to physical therapy, but takes medications, which provide "some relief." (AR 309.) As Dr. Sachdeva reviewed Plaintiff's medical records with him and explained the MRI results, Plaintiff "became very argumentative and confrontational," and asserted "there is more wrong with me than what is listed in the MRI." (AR 309.) Plaintiff also stated he has had "major problems" after he was involved in a car accident in 1986, but could not provide any further history or details. (AR 309.)

Dr. Sachdeva noted that the physical examination was "very limited" because Plaintiff refused to participate in all aspects of the exam and refused to be examined without his cane due to a fear of falling. (AR 311.) However, Dr. Sachdeva found Plaintiff had normal grip strength

bilaterally and straight leg raising was negative at 90 degrees.  (AR 311–12.)  Dr. Sachdeva also noted there appeared to be increased muscle tone throughout the lower back, but he could not assess range of motion because Plaintiff refused the test.  (AR 312.)  Plaintiff also refused the examination of his hips, but range of motion in all other upper and lower extremities were within normal limits.  (AR 312.)

In light of the limited physical examination and inconsistency between Plaintiff's medical history and the MRIs, Dr. Sachdeva opined Plaintiff could sit without restriction and could stand and walk for six to eight hours a day without an assistive device.  (AR 314.)  Dr. Sachdeva also opined Plaintiff could occasionally lift up to thirty pounds and fifteen pounds frequently, and Plaintiff may be mildly limited in climbing, balancing, stooping, kneeling, crawling, and crouching.  (AR 314.)

### 4.  Gettysburg Medical Clinic

On February 8, 2016, Plaintiff presented at the Gettysburg Medical Clinic in Fresno, California to establish care for back and neck pain, diabetes, and other conditions.  (AR 427.)  Plaintiff reported that he was unable to walk long distances due to fatigue and weakness in his legs.  (AR 427.)  Plaintiff further reported that he needed a power wheelchair and the treatment plan indicates that a referral for a power wheelchair would be provided.  (AR 427.)  On February 25, 2016, Grace W. Lim, M.D., prescribed Plaintiff a power wheelchair and referred Plaintiff to physical therapy for a mobility evaluation.  (AR 452, 444.)  The prescription note is brief with no specific findings, but states in full:  "Pt needs power wheelchair.  Dx back pain."  (AR 452.)  On April 15, 2016, Dr. Johnny Fong, M.D., prescribed Plaintiff a walker with a seat and brakes due to back and neck pain.  (AR 437.)  Similar to Dr. Lim's wheelchair prescription, there are no specific findings or discussion of Plaintiff's condition on the walker prescription.  (AR 437.)

On May 2, 2016, Family Nurse Practitioner ("F.N.P.") Laura Cox completed a form titled "Verification of Incapacity" for the County of Fresno.  (AR 415.)  F.N.P. Cox noted that Plaintiff suffered from neck pain and decreased range of motion in the neck and spine since July 18, 2015, which would temporarily prevent Plaintiff from working.  (AR 412.)  F.N.P. Cox also noted that Plaintiff was attending physical therapy and estimated that Plaintiff would be able to

return to work on May 2, 2017.  (AR 412, 415.)  The form is stamped at the top with the name and address of Johnny Y. Fong, M.D.  (AR 415.)  Plaintiff continued to visit the Gettysburg Medical Clinic throughout 2016, to refill his prescriptions and for treatment of his diabetes, ongoing pain, and other medical conditions.  (AR 419–26.)  He was referred to a cardiologist for chest pain (AR 423), who examined Plaintiff and noted that Plaintiff exhibited a normal gait and was capable of exercising (AR 409).  The cardiologist discussed the importance of diet and exercise with Plaintiff and instructed Plaintiff to maintain a low sodium diet.  (AR 409.)

On February 15, 2017, Plaintiff complained of increased pain in his neck, back, and hips following a fall in December 2016, and was referred for an MRI.  (AR 418.)  The MRI of the thoracic spine revealed no significant central spinal stenosis, but did show spondylotic changes with multilevel disc protrusions and facet arthropathy.  (AR 329–30.)  The thoracic spine MRI also revealed a right paracentral disc protrusion at T10–T11, which indented the ventral spinal cord, and multilevel neural foraminal stenosis due to facet arthropathy.  (AR 330.)  The MRI of Plaintiff's cervical spine revealed spondylotic changes without central spinal stenosis.  (AR 332.)  The cervical MRI also revealed mild flattening of the left ventral spinal cord at C5–C6 and C6–C7, as well as moderate narrowing of the left C3–C4 and the right C4–C5 and C5–C6 neural foramina.  (AR 332.)  The MRI of the lumbar spine revealed lumbar spondylosis, not significantly changed from the previous study, and no central spinal stenosis.  (AR 333.)  The lumbar MRI also showed mild to moderate narrowing of the right and moderate narrowing of the left, L5–S1 neural foramina.  (AR 334.)

On April 10, 2017, F.N.P. Cox completed a second "Verification of Incapacity" form for the County of Fresno.  (AR 413.)  F.N.P. Cox concluded Plaintiff was permanently unable to work due to neck and back pain as well as difficulty moving his neck and walking, sitting, and standing for long periods of time.  (AR 414.)  F.N.P. Cox listed the following conditions as "reduc[ing] [Plaintiff's] ability to engage in work": lumbar spondylosis, cervical spine neural foraminal narrowing and central canal stenosis, and spondylitic changes of the thoracic spine with foraminal stenosis and face arthropathy.  (AR 414.)  F.N.P. Cox noted that Plaintiff's

condition was not improving and he refused narcotics. (AR 413.) The form is stamped at the bottom with the name and address of Johnny Y. Fong, M.D.

### 5. Dueker Fee Physical Therapy

On April 19, 2016, Plaintiff presented to Dueker Fee Physical Therapy for a strength and mobility evaluation to assess the appropriateness of an electric wheelchair. (AR 327–28.) The physical therapist noted Plaintiff could ambulate fifteen to twenty feet using a cane, but had severe pain in his right hip, lower back, and knee; a moderate to severe antalgic gait; and a moderate trendelenburg gait. (AR 327.) The physical therapist recommended a power wheelchair to assist Plaintiff with activities of daily living and opined a walker would not significantly improve his gait because of progressive degenerative joint disease, severe pain with weight bearing, and risk of falling. (AR 328.) The line on the form indicating that a physician agrees with the physical therapist's evaluation is blank. (AR 328.)

### 6. State Agency Physicians

On September 16, 2015, E. Wong, M.D., a Disability Determination Services medical consultant, reviewed the medical evidence of record and concluded Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours in an eight-hour day with normal breaks, and sit six hours in an eight-hour day with normal breaks. (AR 61.) Dr. Wong also concluded Plaintiff could frequently climb ramps or stairs, balance, and crawl, and occasionally climb ladders, ropes, or scaffolds, stoop, and crouch. (AR 62.) Plaintiff requested reconsideration of Dr. Wong's opinion, and on December 14, 2015, another Disability Determination Services medical consultant, W. Jackson, M.D., performed an independent review of Plaintiff's medical records and affirmed Dr. Wong's opinion. (AR 81–83.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's application for DIB and SSI initially on September 17, 2015, and again on reconsideration on December 15, 2015. (AR 98–101, 108–12.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 114–15.) Plaintiff appeared with counsel at the hearing on September 12, 2017, and testified before an ALJ as to his alleged disabling conditions. (AR 18; *see generally* AR 36–55.)

### 1. Plaintiff's Testimony

Plaintiff testified that he experiences pain in his lower back "like a pinching sensation, like with a pair of pliers." (AR 42.) The pain radiates into both legs, where his legs get weak and he feels a "burning and stinging sensation through [his] legs and [his] feet." (AR 42.) The pain also radiates to his right hip, and he has a hard time supporting his weight because it feels "like bone on bone" in his right hip. (AR 42.) The pain in his back "comes and goes," but "most of the time" he has pain in either the lower or middle parts of his back. (AR 42–43.) The pain in his middle back can feel "like somebody's shoving a knife in [his] back, or spear" and it "throws [him] on the ground." (AR 43.)

Plaintiff also testified he experiences pain in his neck that "feels like [he has] metal rocks in [his] neck," which radiates down his neck through his shoulders and into his hands. (AR 43.) He has to be careful with how he moves his neck or he may trigger a painful reaction. (AR 44.) The pain radiating to his hands causes him to lose strength and control of his hands and occurs seven or eight times a day for five to twenty minutes at a time. (AR 50.) He also experiences muscles spasms, dizziness, vertigo, and headaches two or three times a week that last between two hours and two days. (AR 43–44.)

According to Plaintiff, he can walk for about ten minutes before he has to stop and can stand for five to ten minutes with his cane before he needs to sit down. (AR 45–47.) He can lift one to three pounds and sit for fifteen to twenty minutes before changing positions. (AR 43, 45.) Plaintiff also has problems bending over, raising his arms over his head, and is not capable of climbing stairs. (AR 46.) When his back is bothering him, he shifts positions or he lays down. (AR 43.) He also takes Ibuprofen for the pain or takes a hot shower, which helps with the pain. (AR 44.) However, he does not want to take stronger medications because he has "enough problems without taking narcotics" and does not want surgery because "complications of surgery could make things worse." (AR 45.)

On a typical day, Plaintiff wakes up around 9:00 or 10:00 a.m. and his wife helps him get dressed. (AR 39.) He has some coffee, reads a "chapter of a book or so," talks with his wife for a little bit, and then goes outside to get some sun. (AR 39.) When he comes back inside, he

talks to his wife again, and then rests while his wife makes lunch.  (AR 39–40.)  After lunch, he listens to the radio, talks to his wife, rests some more, and goes outside again to sit for fifteen to twenty minutes.  (AR 40.)  After he goes back inside, he rests, talks to his wife, listens to the radio, and reads again while his wife makes dinner.  (AR 40.)  After dinner, he rests, takes a shower, and gets ready for bed.  (AR 40.)  When he rests during the day, he lays down, but has difficulty sleeping, and it can take two to three hours before he falls asleep because of the pain.  (AR 40.)

He does not do any household chores or cooking, but "maybe" he microwaves a burrito.  (AR 39.)  He cannot shower or get dressed without his wife's assistance and does not engage in any type of social activity.  (AR 39.)  He goes shopping with his wife, but he is in a wheelchair and she pushes the grocery cart.  (AR 39.)  He uses the wheelchair when he leaves the house and uses a cane to get around in the house.  (AR 45.)

### 2.     Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff has past work experience as a truck driver, Dictionary of Operational Titles ("DOT") code 904.383-010, which was heavy work as performed by Plaintiff.  (AR 52.)

The ALJ then asked the VE five hypothetical questions considering a person of Plaintiff's age, education, and work experience.  First, the ALJ asked the VE to consider a person who can lift and carry twenty pounds occasionally and ten pounds frequently.  (AR 52.)  This person could also sit, stand, or walk six to eight hours a day; occasionally reach overhead, stoop, crouch, and climb ladders, ropes, and scaffolds; and frequently climb, balance, kneel, and crawl.  (AR 52.)  The ALJ then asked the VE whether such a person could perform any of Plaintiff's past work.  (AR 52.)  The VE testified that such a person could not perform Plaintiff's previous work as a truck driver.   (AR 52.)  However, such a person could perform the following light work: (1) cashier, DOT code 211.462-010, (2) parking attendant, DOT code 915.473-010, and (3) office helper, DOT code 239.567-010.  (AR 52.)

The ALJ then asked the VE a second hypothetical question considering the same person as the first hypothetical, but who requires a cane for ambulation.  (AR 52.)  The VE testified

such a person could perform the same positions outlined in response to the first hypothetical. (AR 52.)

The ALJ asked the VE a third hypothetical question considering the same person with the same capabilities as outlined in the first hypothetical except that the individual could occasionally lift and carry ten pounds, stand or walk only two hours, and required a cane for ambulation.  (AR 53.)  The VE testified such an individual could perform the following sedentary work: (1) order clerk, DOT code 209.567-014, (2) semiconductor bonder, DOT code 726.685-066, and (3) inspector, DOT code 726.684-050.  (AR 53.)

For the fourth hypothetical question, the ALJ asked the VE to again consider the same person with the same capabilities as outlined in the first hypothetical, except this person would need a cane to stand or ambulate and a wheelchair for prolonged ambulation.  (AR 53.)  The VE testified that such a person could perform the sedentary work outlined in response to the third hypothetical.  (AR 53.)  Finally, for the fifth hypothetical, the ALJ asked if there would be any work opportunities if the individual described in any of the previous four hypotheticals needed an additional two to four breaks every 30 minutes.  (AR 53.)  The VE responded that there would be no work for such a person.  (AR 53.)

**C.    The ALJ's Decision**

In a decision dated December 21, 2017, the ALJ found that Plaintiff was not disabled.  (AR 18–28.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920.  (AR 20–28.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, August 24, 2010.  (AR 20.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments: "lumbar, thoracic, and cervical degenerative disease, obesity, and umbilical hernia."  (AR 21.)  However, at Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  (AR 21.)  The ALJ determined that Plaintiff had the residual functional capacity

("RFC")[3]

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit, stand, or walk for six to eight hours. The individual can occasionally climb ladders, ropes, and scaffolds. The individual can occasionally stoop or crouch. The individual can frequently climb, balance, kneel, or crawl. The individual can occasionally overhead reach. The individual requires a cane for ambulation.

(AR 22.) The ALJ gave little weight to the opinion of F.N.P. Cox because her opinion that Plaintiff cannot work is a determination reserved for the Commissioner. (AR 25.) The ALJ also reasoned that F.N.P. Cox "provided little support for her conclusion or indication that she analyzed the longitudinal record." (AR 25.) The ALJ gave "some weight" to Dr. Sachdeva's opinion because it was consistent with Dr. Sachdeva's examination as well as the imaging studies available to him. (AR 25.) The ALJ gave greater weight to the opinions of Drs. Wong and Jackson because these opinions were consistent with Plaintiff's symptoms, the MRI studies, and Dr. Sachdeva's examination. (AR 25.) The ALJ determined that, given his RFC, Plaintiff was unable to perform his past work as a truck driver (Step Four). (AR 26.) However, the ALJ concluded Plaintiff was not disabled because he could perform a significant number of other jobs in the local and national economies including cashier, parking attendant, and office helper (Step Five). (AR 26–27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 16, 2018. (AR 2–7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed a complaint before this Court on May 12, 2018, seeking review of the ALJ's decision. (Doc. 1.)

## III.  SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996), 1996 WL 374184. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.  APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b),

416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, before considering the Fourth Step, the ALJ must determine the claimant's residual functional capacity, which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the claimant's impairments. *Id*. §§ 404.1520(e), 416.920(e). Next, at Step Four, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

In his Opening Brief, Plaintiff contends the ALJ erred in two respects: (1) the ALJ failed to articulate sufficient reasons for discrediting F.N.P. Cox's opinion; and (2) the ALJ failed to include certain limitations in the RFC assessment including standing and lifting restrictions resulting from Plaintiff's use of a cane and Plaintiff's prescription for a power wheelchair. (*See* Doc. 14 at 8–14.) Defendant responds that the ALJ properly weighed the conflicting evidence and medical opinions regarding Plaintiff's physical limitations. (Doc. 18 at 5–12.)

### A. The ALJ's Consideration of the Medical Opinions

#### 1. Legal Standard

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL

636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physicians); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physicians). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d

13

1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

## 2. The ALJ Stated Sufficient Reasons for Rejecting F.N.P. Cox's Opinion.

F.N.P. Cox treated Plaintiff at Gettysburg Medical Clinic and provided opinions on May 2, 2016 and April 10, 2017, regarding Plaintiff's ability to work. (AR 412–15.) On May 2, 2016, F.N.P. Cox opined Plaintiff was temporarily unable to work due to neck pain and decreased range of motion in the neck and spine. (AR 412.) On April 10, 2017, F.N.P. Cox opined Plaintiff was permanently unable to return to work due to neck pain, back pain, and difficulty moving his neck and walking, sitting, and standing for long periods of time. (AR 413–14.)

In discrediting F.N.P. Cox's opinion, the ALJ stated:

> Whether a claimant can work or is disabled is an issue reserved for the Commissioner. . . Ms. Cox based her opinion on her treatment of the claimant, stating that the claimant's neck and back pain and difficulty moving prevented him from working, and noting that his condition is not improving and he does not want to take narcotics. . . . Dr.[5] Cox provided little support for this conclusion or indication that she analyzed the longitudinal record. While the claimant was prescribed ambulatory assistance and there was one moderate-to-severe finding on an imaging study, the undersigned gives greater weight to the opinions of DDS consultants E. Wong and W. Jackson, as they are more consistent with the longitudinal record, as discussed above.

(AR 25–26.) In sum, the ALJ discounted F.N.P. Cox's opinion because the opinion was: 1) on an issue reserved for the Commissioner, and 2) conclusory and inconsistent with other medical evidence and opinions in the record. Because F.N.P. Cox's opinion was contradicted by the medical opinion evidence of Disability Determination Services non-examining consultants Drs.

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

[5] The Court notes that the ALJ erroneously refers to F.N.P. Cox as "Dr. Cox," even though F.N.P. Cox is a nurse practitioner and not a doctor.

Wong and Jackson, who both opined Plaintiff was not permanently disabled, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting F.N.P. Cox's opinion.[6] *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

Here, the ALJ properly discredited F.N.P. Cox opinion because the only functional limitation in the opinion—that Plaintiff is unable to work—is on an issue reserved for the Commissioner. F.N.P. Cox did not provide any specific functional limitations regarding Plaintiff's ability to lift or carry a limited amount of weight; stand, walk or sit for a particular period of time; or reach in any direction with any frequency. Instead, the only specific conclusion F.N.P. Cox reached was in checking the box indicating that Plaintiff was unable to work temporarily (AR 412), and permanently (AR 414). This is a conclusion reserved for the Commissioner, and thus, the opinion was entitled to little weight and the ALJ provided a specific and legitimate reason for rejecting the opinion. *See Murillo v. Colvin*, No. CV 12-3402-MAN, 2013 WL 5434168, at *4 (C.D. Cal. Sept. 27, 2013) ("[T]he ALJ provided a specific and legitimate reason for disregarding Dr. Tushla's ultimate conclusion in his November 12, 2007 letter, that is, that plaintiff is disabled." (citing 20 C.F.R. § 404.1527(e)(1))); *Soroka v. Berryhill*, No. 1:17-CV-01571-GSA, 2018 WL 6243020, at *10 (E.D. Cal. Nov. 29, 2018) ("A conclusory opinion that a claimant is disabled is entitled to little weight since the Commissioner 'will not give any significance to the source of an opinion on issues reserved to the Commissioner,' including whether a claimant is disabled." (quoting *Calhoun v. Berryhill*, 734 Fed. Appx. 484, 487 (9th Cir. 2018))).

Plaintiff contends F.N.P. Cox's opinion includes functional limitations on issues not reserved to the Commissioner because F.N.P. Cox stated Plaintiff had difficulty moving his neck, and sitting, standing and walking for long periods of time. (Doc. 14 at 9.) However, even if the

---

[6] Defendant contends the ALJ need only provide "germane reasons" for rejecting F.N.P. Cox's opinion because she is not an "acceptable medical source" under the applicable Social Security regulations. (Doc. 18 at 6.) Plaintiff contends the ALJ needed to provide "specific and legitimate" reasons because the opinion should be attributed to Plaintiff's treating physician Dr. Fong, who stamped the form. (Doc. 14 at 8.) However, the Court need not reach this issue because even if the Court considers F.N.P. Cox an "acceptable medical source," the ALJ provided sufficient reasons for rejecting her opinion.

1    Court construes these statements as functional limitations, the ALJ provided two sufficient reasons
2    for rejecting this portion of F.N.P. Cox's opinion. First, the ALJ noted that F.N.P. Cox "provided
3    little support" for her opinion or "indication that she analyzed the longitudinal record." (AR 25.)
4    An ALJ may properly discount an opinion that is "conclusory, brief, and unsupported by the record
5    as a whole" and therefore, the ALJ provided specific and legitimate reasons for discrediting F.N.P.
6    Cox's opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

7         Second, the ALJ also discredited Ms. Cox's opinion because it was inconsistent with the
8    opinions of non-examining physicians Drs. Wong and Jackson. Such opinions "may serve as
9    substantial evidence when they are supported by other evidence in the record and are consistent
10   with it." *Andrews*, 53 F.3d at 1041; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)
11   ("Although the contrary opinion of a non-examining medical expert does not alone constitute a
12   specific, legitimate reason for rejecting a treating or examining physician's opinion, it may
13   constitute substantial evidence when it is consistent with other independent evidence in the
14   record.").

15        Here, the ALJ gave F.N.P. Cox's opinion less weight than the opinions of Drs. Wong and
16   Jackson because those opinions were more consistent with the medical record. (AR 25.) Both
17   Drs. Wong and Jackson opined Plaintiff could lift and carry twenty pounds occasionally and ten
18   pounds frequently, stand and/or walk six hours in an eight-hour day with normal breaks, and sit
19   six hours in an eight-hour day with normal breaks. (AR 61, 82.) The ALJ noted that these opinions
20   are supported by medical evidence in the record including mild to moderate MRI findings (AR 25
21   (citing AR 285-86, 289, 291, 330-31, 334)) and the opinion of Dr. Sachdeva, who opined Plaintiff
22   could sit without restriction and could stand and walk for six to eight hours a day without an
23   assistive device (AR 25 (citing AR 314)). While Plaintiff identifies evidence in the record that is
24   consistent with F.N.P. Cox's opinion, such as the prescription for a power wheelchair (Doc. 14 at
25   10), Plaintiff does not contend no evidence in the record supports the opinions of Drs. Wong and
26   Jackson. Accordingly, because evidence in Plaintiff's medical record supports Drs. Wong and
27   Jackson's opinions and the ALJ is charged with resolving conflicts and ambiguities in the medical
28   record, *Andrews*, 53 F.3d at 1039, the ALJ did not err by relying on the opinions of Drs. Wong

and Jackson to discredit F.N.P. Cox's opinion. *Corder v. Comm'r*, No. 2:16–cv–1969–KJN, 2018 WL 466265, at *4 (E.D. Cal. Jan. 18, 2018) (holding the ALJ properly relied on contrary opinions from state agency physicians to discount a treating physician's opinion where the state agency physicians' opinions were consistent with the medical record); *Lott v. Berryhill*, No. 2:17–cv–00986–KJN, 2018 WL 4292247, at *4 (E.D. Cal. Sept. 7, 2018) (same); *Delgadillo v. Colvin*, No. 1:12–cv–703 GSA, 2013 WL 5476413, at *7 (E.D. Cal. Sept. 30, 2013) (same).

**B.     The ALJ's RFC Assessment**

**1.     Legal Standard**

An RFC assessment is an "administrative finding" that is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(2). The RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions, including lay opinions, as well as the claimant's credibility. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). The RFC assessment must be supported by substantial evidence, and "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8p).

**2.     The ALJ's RFC Assessment Does Not Conflict with the Demands of the Light Duty Jobs Identified by the ALJ at Step Five.**

The ALJ's RFC assessment provides that Plaintiff "requires a cane for ambulation." (AR 22.) The ALJ included this limitation in her questions to the VE, and consistent with the VE's testimony, the ALJ found that Plaintiff was not disabled because he could perform the following light duty jobs: cashier, parking attendant, and office helper. (AR 26–27.) Plaintiff contends an "individual who uses a cane for ambulation cannot perform the standing, walking, and lifting objects weighing up to 20 pounds that is required of light work." (Doc. 14 at 11.) As a result, according to Plaintiff, the ALJ erred by failing to reconcile the conflict between the demands of

light work, which requires Plaintiff to carry up to twenty pounds, and the use of a cane for ambulation, which occupies one of Plaintiff's upper extremities. (Doc. 14 at 11.)

An ALJ errs when he or she fails to resolve a conflict between an RFC assessment and the demands of jobs identified by the VE's testimony. *See Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing POLICY INTERPRETATION RULING: TITLES II & XVI: USE OF VOCATIONAL EXPERT & VOCATIONAL SPECIALIST EVIDENCE, & OTHER RELIABLE OCCUPATIONAL INFO. IN DISABILITY DECISIONS, SSR 00-4P (S.S.A. Dec. 4, 2000), 2000 WL 1898704). Plaintiff asserts there is a conflict between the use of a cane and light work because Plaintiff assumes that the light duty jobs identified in the VE's testimony, and adopted at Step Five of the ALJ's decision, require the use of two hands. However, the DOT descriptions for these positions do not specify that Plaintiff must use both hands to perform the tasks associated with the positions. DOT code 211.462-010 (cashier), 915.473-010 (parking attendant), 239.567-010 (office helper). Therefore, "the ALJ did not need to inquire about an apparent conflict because no conflict between the VE and the DOT existed." *Ellis v. Colvin*, No. CIV 14-2417-PHX-MHB, 2016 WL 212675, at *3 (D. Ariz. Jan. 19, 2016) (finding no conflict between an RFC allowing for the possible use of a cane and the DOT descriptions for parking attendant, cashier, and order caller); *see also Dalke v. Astrue*, No. EDCV 10-01659-OP, 2011 WL 2433457, at *3 (C.D. Cal. June 14, 2011) (finding no error where the RFC limited the plaintiff to use a cane "as needed" and the plaintiff failed to show that "the tasks associated with the electronics worker job require the use of two hands").

Moreover, Plaintiff fails to provide a single case where a court has found that the use of a cane conflicts with the ability to do light work and there is ample authority in the Ninth Circuit affirming ALJ decisions that allow for the use of a cane and find the plaintiff is capable of light work. *See, e.g.*, *Gilder v. Colvin*, No. CV 14-5909-SP, 2016 WL 94228, at *10 (C.D. Cal. Jan. 7, 2016) *aff'd in part and remanded in part sub nom on other grounds*, *Gilder v. Berryhill*, 703 Fed. Appx. 597 (9th Cir. 2017) ("Plaintiff's RFC requiring use of a cane for distances greater than 100 feet also does not conflict with SSR 83-10's description of light work as requiring frequent lifting and carrying of objects weighing up to ten pounds."); *Anderson v. Astrue*, No. 11cv3021–LAB(KSC), 2013 WL 1309442, at *11 (S.D. Cal. Feb. 27, 2013) ("[S]ubstantial evidence supports

the ALJ's decision that plaintiff is not disabled and is capable of light work even if plaintiff uses a cane."); *Duarte v. Comm'r of Soc. Sec.*, No. 1:15–cv–01860–SAB, 2017 WL 495645, at \*10 (E.D. Cal. Feb. 6, 2017) ("The light RFC takes into account not only Plaintiff's ability to stand and walk, but also Plaintiff's abilities to lift objects. . . . Plaintiff is able to meet the exertional requirements of light work for standing and walking, because he is able to stand and walk for six hours, even though he has to use a cane or walker."). Accordingly, because Plaintiff bears the burden of proving the ALJ erred, the Court finds the ALJ did not err by adopting an RFC requiring Plaintiff to use a cane for ambulation and finding Plaintiff was able to do the light work jobs identified by the VE. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (alterations in original) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).

**3.    The ALJ Properly Considered Plaintiff's Use of a Power Wheelchair.**

Plaintiff contends the ALJ's RFC assessment is erroneous because it fails to account for his need for a power wheelchair. (Doc. 14 at 12–14.) Plaintiff asserts the ALJ (1) ignored the prescription for a power wheelchair in the record and (2) failed to properly consider Plaintiff's testimony that he uses a power wheelchair. However, the Court finds that the ALJ's RFC assessment properly considers both the wheelchair prescription and Plaintiff's testimony.

First, the ALJ was not required to specifically reject the prescription for the power wheelchair because the prescription was neither significant nor probative. While the ALJ weighs medical and other source opinions in formulating the RFC, "the ALJ is not required to discuss evidence that is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Here, the prescription for a power wheelchair, dated February 25, 2016 and signed by Dr. Lim, states in full: "Pt needs power wheelchair. Dx Back Pain." (AR 452.) This is the only note from Dr. Lim in the record, and there is no evidence Dr. Lim even examined Plaintiff before signing her name on the prescription note. The prescription only states Plaintiffs "needs power wheelchair," with no indication of the maximum distance or time Plaintiff could walk without a wheelchair or any other functional limitations. The prescription is brief, conclusory, and not supported by clinical findings, and therefore, the ALJ did not err in failing to

specifically reject the prescription for a power wheel chair.[7] *Jones v. Berryhill*, 685 Fed. Appx. 536, 537 (9th Cir. 2017) ("The Administrative Law Judge ('ALJ') did not err in failing to discuss medical records from an August 2005 examination by Vatche Cabayan, M.D., because . . . they were not supported by an explanation or clinical findings."); *Guerrero v. Colvin*, No. 1:15–cv–0962–BAM, 2016 WL 5661722, at *8 (E.D. Cal. Sept. 29, 2016) (finding the ALJ did not err in failing to discuss a physician's opinion where the opinion was "brief, conclusory, and provided no explanation of specific functional limitations"); *Barry v. Astrue*, No. EDCV 09–2008–JEM, 2011 WL 165388, at *5 (C.D. Cal. Jan. 18, 2011) (finding the ALJ did not err in failing to discuss a physician's opinion where the "resulting opinion is brief, and it does not explain what clinical findings he relied upon in forming his opinion").

Second, the ALJ provided sufficient reasons for discrediting Plaintiff's testimony regarding the use of a wheelchair. The ALJ can only reject the claimant's testimony about the severity of Plaintiff's symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Here, the ALJ's credibility assessment properly relied on Plaintiff's overall conservative medical treatment record. The ALJ noted Plaintiff "was reported as unwilling to consider surgery for his back and also did not want steroid injections" and "stated that he was content with conservative treatment and medication." (AR 23 (citing AR 277)).) While Plaintiff points to the "significant measures" he took to control his pain, such as "lying down often, using a cane, and using a power wheelchair," the Court finds these measures do not invalidate Plaintiff's otherwise effective conservative treatment methods, including the successful use of Ibuprofen to control his pain. (AR 277 ("Ibuprofen works well to

---

[7] To the extent the ALJ erred by failing to provide specific reasons for rejecting Dr. Lim's wheelchair prescription or Dueker Fee Physical Therapy's wheelchair recommendation, any error would be harmless. The ALJ discredited Plaintiff's subjective pain testimony, including his need for a power wheelchair, based on his conservative treatment record and inconsistency with the objective medical record, and both of those findings would be sufficient reasons to discredit the wheelchair prescription and recommendation. *See Molina v. Colvin*, No. EDCV 12–01995 AN, 2013 WL 5220570, at *2 n.2 (C.D. Cal. Sept. 16, 2013) (finding that even if an ALJ erred by failing to discuss a physician's report, the error was harmless because the opinion was conclusory and not supported by objective medical evidence) (citing *Stout v. Comm'r of Soc. Security*, 454 F.3d 1050, 1055 (9th Cir.2006) (an ALJ's error is harmless where such error is inconsequential to the ultimate non-disability determination)); *see also Embernate v. Berryhill*, No. 2:17–cv–0040–JAM–DB, 2018 WL 888986, at *6 (E.D. Cal. Feb. 14, 2018) ("ALJ may discount a physician's opinion if it is inconsistent with the plaintiff's conservative treatment."); *Batson*, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole, or by objective medical findings).

control his pain."), 309 ("He . . . does take medications with some relief.").  Accordingly, the ALJ did not err in discrediting Plaintiff's allegations of disabling pain based on Plaintiff's conservative treatment record.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding the claimant's conservative treatment record "suggest[ed] a lower level of both pain and functional limitation" and "if the claimant had actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time"); *Casey H., v. Berryhill*, No. EDCV 18-0116-JPR, 2018 WL 5629303, at *13 (C.D. Cal. Oct. 29, 2018) ("That Plaintiff essentially was treated only with pain medication and did not pursue physical therapy, specialized pain management, or injections was a clear and convincing reason for discrediting his allegations of disabling pain.").

The ALJ also properly found that the objective medical evidence fails to support Plaintiff's subjective complaints.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  Here, the ALJ noted that at multiple appointments for medical issues not involving Plaintiff's back, he was described as having a normal gait with no back problems.  (AR 23–24 (citing AR 446 (negative for back pain, joint swelling, gait problem, neck pain, and neck stiffness, and physical examination revealed normal range of motion and normal strength), 409 ("Gait – Normal.  Able to Exercise – Yes.").)  The ALJ also noted two sets of imaging studies that generally revealed only mild to moderate findings except for moderate to severe disc loss height at L5–S1. (AR 24 (citing (AR 285–89, 331–34, 350).)  Plaintiff's allegations of disabling pain were also inconsistent with Dr. Sachdeva's examination, which revealed a negative straight leg raise test, increased muscle tone in the lower back, and intact sensation.  (AR 24 (citing AR 311–312).)  Accordingly, the ALJ properly discredited Plaintiff's testimony regarding the severity of his physical impairments based on contradictions between the medical record and Plaintiff's testimony.  *Branson v. Berryhill*, No. 2:15–cv–2675 AC, 2017 WL 1179160, at *6 (E.D. Cal. Mar. 30, 2017) ("[T]he ALJ may consider and rely upon objective medical evidence and physician opinions that contradict plaintiff's subjective testimony." (citing *Carmickle*, 533 F.3d at 1161)); *White v. Colvin*, No. 1:15–cv–01367–JLT, 2017 WL 387244, at *9 (E.D. Cal. Jan. 27, 2017)

("Because the ALJ identified inconsistencies between the medical record and Plaintiff's testimony, the objective medical record supports the adverse credibility determination." (citing *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006))).

In response to the portions of the medical record identified by the ALJ, Plaintiff contends the ALJ erred because Plaintiff's "testimony concerning the need for a power wheelchair is consistent with the assertions of multiple physicians who recommended and prescribed that wheelchair." (Doc. 14 at 12.) To be sure, the record also contains some evidence that supports Plaintiff's claims of debilitating back pain, such as the prescription for a wheelchair. However, "credibility determinations are the province of the ALJ" and it is the function of the ALJ to resolve any ambiguities. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding no error with the ALJ's credibility determination even though the ALJ "could easily have relied on other nonmedical evidence in the record to reach the opposite conclusion"). Here, by citing to specific portions of the record demonstrating that conservative care effectively treated Plaintiff's pain and other portions showing Plaintiff's physical impairments were not as severe as he alleged, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied her burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958. Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Id.* at 959.

Finally, the Court notes that the ALJ did not ignore the prescription for a power wheelchair as Plaintiff contends and in fact, specifically referred to the prescription for the wheelchair multiple times in her opinion. For example, neither Dr. Wong nor Dr. Jackson opined that Plaintiff needed an ambulatory assistance device, but the ALJ expressly referred to Dr. Lim's prescription for a wheelchair in formulating an RFC that deviated from Drs. Wong and Jackson's opinions. (AR 25 ("While the prescribed ambulatory assistance (e.g. Exhibits 9F/1. 15F/28) and largely mild to moderate MRI findings do indicate that a cane and reaching limitations should also be included in the claimant's residual functional capacity, the opinions of Drs. Wong and Jackson are

otherwise consistent with the claimant's symptoms, mild to moderate MRI findings . . . and the results of his consultative examination with Dr. Sachdeva[.]").)  Similarly, in partially discrediting Dr. Sachdeva's opinion, the ALJ noted, "the undersigned gives additional consideration to the claimant's allegations in light of the prescribed ambulatory assistance devices[.]"  (AR 25.)  The ALJ also discussed the recommendation for ambulatory assistance in her discussion of Plaintiff's pain testimony and decision to allow for a cane in the RFC assessment.  (AR 24 ("Nonetheless, in light of the claimant's consistent subjective complaints as well as recommendations for ambulatory assistance, a limitation to a light exertion level with use of a cane . . . adequately accounts for the claimant's severe physical impairments.").)

Accordingly, because the ALJ specifically discussed how the RFC assessment incorporated the recommendations for ambulatory assistance devices, the ALJ's RFC assessment is not defective.  *See McIntosh v. Colvin*, No. 16–cv–0963–JAH–BGS, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018) ("There is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC." (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").

In sum, because Dr. Lim's prescription for a power wheelchair was brief, conclusory, and not supported clinical findings, the ALJ was not required to discuss or specifically reject it. However, even if the ALJ erred by failing to discuss Dr. Lim's prescription or Dueker Fee Physical Therapy's wheelchair recommendation, the error was harmless, because the prescription for a power wheelchair was inconsistent with Plaintiff's medical record, including his conservative treatment record.  The ALJ also properly rejected Plaintiff's testimony regarding his use of a wheelchair and allegations of debilitating pain based on Plaintiff's conservative treatment record and inconsistencies between Plaintiff's testimony and the objective medical evidence in the record.  Finally, the ALJ did not entirely ignore the power wheelchair prescription as Plaintiff

contends because the ALJ incorporated the need for ambulatory assistance in the RFC, which was a more significant limitation than Drs. Wong, Jackson, or Sachdeva opined.

## VI. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: __**April 13, 2019**__           _/s/ Sheila K. Oberto_
                                         UNITED STATES MAGISTRATE JUDGE